**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JACK ALLEN MITCHELL, II,

    **Plaintiff,**

    v.                                                                    Case No. 16-2145

KANSAS CITY KANSAS SCHOOL
DISTRICT,

    **Defendant.**

## MEMORANDUM & ORDER

This matter comes before the court upon defendant Kansas City Kansas School District's Motion for Summary Judgment (Doc. 38). Plaintiff Jack Allen Mitchell, II, appearing pro se, opposes the motion.

On March 7, 2016, plaintiff filed this case using the court's form employment discrimination complaint (Doc. 1). On December 6, 2016, the court entered a pretrial order that is now the operative pleading in this case (Doc. 34). Plaintiff alleges that defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–e17, by terminating plaintiff's employment based on race discrimination or retaliation. Plaintiff seeks reinstatement, back pay dating back to October 30, 2015, reinstatement of retirement credit, repaid benefits, reinstatement of benefits, actual damages, and attorney fees, should plaintiff retain counsel.

### I. Legal Standard

#### A. Parties proceeding pro se

The court interprets pro se filings liberally, but parties proceeding pro se are still required to comply with the rules of procedure, both federal and local. *Keehner v. Dunn*, 409 F. Supp. 2d 1266, 1270 (D. Kan. 2005). The court may not act as an advocate for a pro se party, but will overlook "a

failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction." *Id.*

### B.     Summary judgment standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The party moving for summary judgment has the burden to show "the lack of a genuine issue of material fact."  *Ascend Media Prof'l Servs., LLC v. Eaton Hall Corp.*, 531 F. Supp. 2d 1288, 1295 (D. Kan. 2008) (citing *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986))).  Once the moving party meets this initial burden, the burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial."  *Id.* (citing *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))).

The nonmovant may not rest on his pleadings or "rely on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986)); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).  Instead, the nonmovant is required to set forth specific facts, by referencing affidavits, deposition transcripts, or exhibits, from which a rational trier of fact could find for him.  Fed R. Civ. P. 56(c)(1); *see also Ascend Media*, 531 F. Supp. 2d at 1295 (citing *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000)).  Summary judgment is not a "disfavored procedural shortcut" —it is an "integral part of the Federal Rules as a whole, which are

designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**II.     Background**

The facts are generally undisputed.  As required by the local rules, defendant set forth a statement of uncontroverted facts, separately numbered and referring with particularity to those portions of the record upon which it relies.  D. Kan. Rule 56.1(a).  The rules provide that all facts set forth in such a statement are deemed admitted for the purposes of summary judgment unless specifically controverted by the statement of the opposing party.  The responding party must "refer with particularity to those portions of the record upon which the opposing party relies."  D. Kan. Rule 56.1(b)(1).  The Rules further provide that if the nonmoving party "relies on any facts not contained in the movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record."  Rule 56.1(b)(2).  "All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions." Rule 56.1(d).  Plaintiff, as a pro se party, was provided a full copy of these rules as required by 56.1(f).

Plaintiff generally does not sufficiently controvert defendant's statements.  He does not provide the court with a statement of uncontroverted facts.  Plaintiff's response contains only the same numbered paragraphs from defendant's motion, admitting or denying most of defendant's statements, sometimes citing to one of plaintiff's attached exhibits.  Many of plaintiff's responses are conclusory denials.  These are insufficient on a motion for summary judgment.

When plaintiff cites any record evidence or exhibit in support of a factual assertion, he generally refers to the exhibit as a whole.  It would be inappropriate for the court to search through

-3-

plaintiff's exhibits for evidence to support his case. Especially where, as here, plaintiff included hours of video and audio recording, and other exhibits that do not have apparent relevance. The court would consider such action impermissible advocacy on the behalf of a pro se party. "[I]t is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004). The response includes no argument section.

### III. The Uncontroverted Facts

The following facts are either: not disputed, insufficiently contested, or where contested are viewed in the light most favorable to plaintiff:

Plaintiff is an African-American. He began working for defendant as a school bus driver on September 10, 2014. Miguel Martin, defendant's Assistant Director of Transportation, hired plaintiff. Mr. Martin was plaintiff's supervisor throughout plaintiff's employment. He felt that plaintiff needed to improve his attitude and that plaintiff's attitude did not improve during the course of his employment. Mr. Martin reported receiving an unusually high number of complaints regarding plaintiff, usually regarding his interactions with co-workers.

In November 2014, plaintiff was placed on administrative leave without pay for three days after an incident where plaintiff falsely reported that he had checked his bus for a missing student, later found the student was on his bus and did not immediately report that fact, left the bus lot with the student, used profanity in front of the student, and used his cell phone while driving. After this incident, plaintiff was warned that any future violations of school district policy would lead to discipline that could include terminating his employment. Plaintiff testified at his deposition that he does not claim that the discipline he received as a result of the November 2014 incident was based on race discrimination.

On January 14, 2015, plaintiff filed a physical and sexual assault complaint on behalf of another school bus driver, Jovita Banuelos. Plaintiff testified at his deposition that he does not suggest or argue that he was fired because he made the report on behalf of Ms. Banuelos.

On February 24, 2015, plaintiff did not follow procedures for reporting his absence from work, which resulted in students being left outside on a cold day until a substitute driver could be sent to pick them up. Mr. Martin spoke to plaintiff about proper procedures for reporting an absence following this incident. Plaintiff testified at his deposition that he does not argue that any action taken by defendant regarding the February 24, 2015 incident was based on race.

Also in February 2015, a safety/efficiency route staff member was assigned to ride along with plaintiff, because it was defendant's policy to do ride alongs when a bus driver was assigned a new route. Mr. Martin reported that plaintiff treated the staff member inappropriately and in a condescending manner. Mr. Martin reported that he later spoke to plaintiff about this incident and plaintiff raised his voice during their discussion. Plaintiff testified at his deposition that he does not claim that defendant took discriminatory action against him as a result of this incident.

In October 2015, Mr. Martin and plaintiff had a number of conversations about whether plaintiff could get a shuttle ride to the south bus lot. Generally shuttle rides are only available to bus drivers who need to change busses during their route. This does not include plaintiff. Mr. Martin reported that plaintiff walked away from one of their discussions, and that plaintiff yelled at a female employee on another day apparently about the same issue, after which Mr. Martin asked plaintiff to come in his office. Once inside, plaintiff complained about the number of female employees in the workplace and was reprimanded. Plaintiff testified at his deposition that he does not argue that anything relating to these shuttle bus disagreements or conversations was racially discriminatory or retaliatory.

On October 30, 2015, a school bus driven by another school bus driver, backed into a vehicle Ms. Banuelos was driving. Plaintiff did not witness the accident and was not present at the scene, although he was nearby. Ms. Banuelos was plaintiff's girlfriend at the time, and she notified plaintiff of the accident after which he joined her at the accident location. Valencia Hunter, employed by defendant, was making an accident report and she and plaintiff had a discussion. Ms. Hunter felt that plaintiff interrupted and interfered with her investigation, that she attempted to explain that it was her job to complete the report, and that he argued with her throughout the process.

At some point, plaintiff spoke with Mr. Martin and requested the rest of the day off to be with his girlfriend. Mr. Martin told plaintiff he could have the day off, but without pay. Plaintiff and Ms. Banuelos did not leave the area for 1–1.5 hours. Mr. Martin says that he eventually contacted the Kansas City Kansas School District Police Department because plaintiff was not leaving and Mr. Martin had received reports about his inappropriate behavior. The police arrived and asked plaintiff to leave, after which plaintiff left.

On November 5, 2015, plaintiff, Bermeeka Mitchel (plaintiff's sister), Mr. Martin, Lenora Miller (Mr. Martin's supervisor), and Gail Taylor (Human Resources Director), among others, attended a meeting to discuss the October 30, 2015 incident. What was discussed at the meeting and plaintiff's demeanor and cooperativeness are disputed.

On December 2, 2015, plaintiff met with Ms. Miller, Dr. Wilcox (Lead Director of Human Resources), and two union representatives. Plaintiff attached an audio recording of the meeting.

On December 9, 2015, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation.

On December 21, 2015, plaintiff was advised that a recommendation for termination of his employment would be made based on plaintiff's aggressive behavior towards other employees, the

unusually high number of complaints received regarding plaintiff, and concern for other employees' safety. On January 5, 2016, plaintiff met with the Director of Transportation, Dr. Wilcox, and union representatives to discuss the recommendation of termination. The recommendation went to the school board and was passed by a vote of 5–0 and an administrative appeal process took place. At the appeal hearing, the committee found that plaintiff had violated policies during his employment and recommended that the termination of plaintiff's employment be upheld. The board of education again voted unanimously to uphold this decision. On February 5, 2016, plaintiff filed a second EEOC charge alleging retaliation.

Plaintiff's claims for discrimination based on race or retaliation are based on the actions of Ms. Miller and the school's chief of police. Plaintiff does not offer any evidence that either individual treated him differently than any other similarly situated individual. But he believes that they discriminated against him and that they treated him differently than others. Plaintiff argues that the protected acts he engaged in were his complaints to the EEOC.

### III. Discussion

Defendant seeks summary judgment because it argues that plaintiff provides no argument or evidence in support of his Title VII claim and therefore cannot establish a prima facie case.

#### A. Race discrimination claim

Under the *McDonnell Douglas Corp. v. Green*, burden-shifting framework, plaintiff has the initial burden to establish a prima facie case of race discrimination. *Canady v. Gen. Motors Corp.*, 368 F. Supp. 2d 1151, 1156 (D. Kan. 2004) (citing *McDonnell Douglas*, 411 U.S. 792 (1973)). Plaintiff must show disparate treatment by showing that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) defendant treated similarly situated employees differently. *Id.* (citing *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998)). If plaintiff

makes this preliminary showing, the burden shifts to defendant to show a facially nondiscriminatory basis for its action. If defendant makes this showing, the burden shifts back to plaintiff, to show that defendant's nondiscriminatory basis for taking the adverse employment action is pretextual.

Defendant argues that plaintiff provides no evidence that other similarly situated employees were treated differently or that defendant's proffered nondiscriminatory reasons for terminating plaintiff's employment were pretextual.

The parties agree that plaintiff is African American, satisfying the first element of a prima facie case. Also, the parties agree that he was fired, which constitutes an adverse employment action—the second element. However, regarding the third element, the court finds that plaintiff provided no evidence or argument that other similarly situated employees were treated differently.

At plaintiff's deposition, plaintiff was asked what employees were treated differently than him. He responded: "I don't have that information at this time." (Doc. 39-3.) He was then asked how he was treated differently, to which he responded "Because I believe [Ms. Miller] did. I don't know how right now, but I believe she did." (*Id.*) Defendant's statement of uncontroverted facts set out that plaintiff did not have any evidence of racially motivated acts, that he was treated differently by Ms. Miller, or that he had any other reason besides his belief that she discriminated against him. Plaintiff admitted these statements. Plaintiff has not provided any evidence that a similarly situated employee was treated differently. Therefore, summary judgment is appropriate as a matter of law and defendant's motion is granted.

Even if plaintiff had established a prima facie case for race discrimination, the court agrees that plaintiff has provided no evidence that defendant's stated nondiscriminatory reasons for terminating plaintiff's employment were pretextual. If plaintiff had made a prima facie case for race discrimination, defendant would have had the burden to show a facially nondiscriminatory basis for

terminating his employment. Defendant has produced numerous nondiscriminatory and non-retaliatory reasons for terminating plaintiff's employment. The December 21, 2015 letter sent to plaintiff by Ms. Miller enumerated a variety of instances when plaintiff was believed to have violated Kansas City Kansas Board Policies, including many of the circumstances described in the facts above.

The burden then shifts back to plaintiff to show that these reasons were pretextual. As noted above, plaintiff does not include an argument section in his response to defendant's motion for summary judgment. Instead, he merely kept the same format as defendant's statement of uncontroverted facts and responded to those statements. Plaintiff has not shown pretext—summary judgment is appropriate on plaintiff's race discrimination claim for this additional reason.

### B.    Retaliation claim

The Tenth Circuit provides two methods by which a plaintiff may prove a retaliation claim. Either "directly show that retaliatory animus played a motivating part in the employment decision" or under the *Mcdonnell Douglas* burden-shifting framework, set out a case of retaliation. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (quoting *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224–25 (10th Cir. 2008)). A prima facie case for retaliation under *McDonnell Douglas* requires plaintiff to show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Id.* (quoting *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008)). If plaintiff makes out a prima facie case, defendant must give a non-retaliatory reason for the adverse actions. If defendant makes that showing, the burden shifts back to plaintiff to show pretext.

Defendant argues that plaintiff did not engage in protected activity until after defendant had decided to take adverse action against him. Additionally, defendant argues there is no causal

connection between plaintiff's EEOC charge and defendant's decision to fire plaintiff.  Finally, even if plaintiff were able to make a prima facie case for retaliation, defendant argues that it had a legitimate non-retaliatory basis for terminating plaintiff's employment and there is no evidence that this decision was pretextual.

The court agrees.  Plaintiff provides no argument in support of either method for showing that retaliation played a role in defendant's decision to terminate plaintiff's employment.  Plaintiff's response does not include any argument or address the *McDonnell Douglas* burden-shifting framework.  Therefore summary judgment is appropriate on plaintiff's retaliation claim.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 38) is granted.

This case is closed.

Dated April 7, 2017, at Kansas City, Kansas.

                                          s/ Carlos Murguia
                                          **CARLOS MURGUIA**
                                          **United States District Judge**